## CIRCUIT COURT OF PRINCE WILLIAM COUNTY

Commonwealth of Virginia

v.

Douglas Marek

August 9, 2002

Case Nos. Cr. 52986, 52987, 52988

BY JUDGE ROSSIE D. ALSTON, JR.

This matter comes on Defendant's motion to suppress.

Defendant seeks to suppress evidence derived from a series of searches the defendant alleges were conducted in violation of the Fourth Amendment of the United States Constitution and Article I, Section 10, of the Constitution of Virginia. The fruit of the poisonous tree doctrine, by which evidence derived from an illegal search is subject to exclusion from trial, dictates that these arguments be addressed in chronological order.

Defendant's first contention is that the .380 caliber shell casings were found during the course of an invalid search of the curtilage to his home. An essential premise of this argument is that the driveway of defendant's home was included in the "curtilage," and therefore was entitled to the same Fourth Amendment protections as the home itself. In *United States v. Dunn*, 480 U.S. 294, 301 (1987), the U.S. Supreme Court, while rejecting a bright-line rule, held that determinations of whether an area was within the curtilage of an individual's home "should be resolved with particular reference to four factors." These factors were (1) the proximity of the area to the home, (2) whether the area was included within an enclosure, (3) the nature of the uses

to which the area is put, and (4) the steps taken by the resident to protect the area from observation by people passing by. See *id.* The "primary focus is whether the area in question harbors those intimate activities associated with domestic life and the privacies of the home." *Id.*

While the driveway is certainly in close proximity to the home, none of the other factors listed in *Dunn* suggest that this driveway should be considered within the curtilage of the defendant's home. The driveway was not secluded in any manner and could be easily viewed by persons passing by on the street. See *Shaver v. Commonwealth*, 30 Va. App. 789, 796 (1994) ("defendants had no reasonable expectation of privacy in those areas of their property observable by members of the public who might approach their residence, pass by, or lawfully be upon their property."). A driveway in an urban neighborhood does not qualify as an intimate area. In short, the defendant did not have any reasonable expectation of privacy with respect to the driveway in front of his home. As a result, the protections of the Fourth Amendment do not impact the officer's discovery of the shell casings in the driveway.

Defendant argues next that regardless of the discovery of the shell casings, the police officers lacked probable cause to search the defendant's home for a .380 caliber handgun. Particularly since the recovery of the shell casings is determined to be valid, that evidence, combined with additional evidence of the telephone report of shots fired and the eyewitness in the neighborhood describing the shots fired into the ground at defendant's home, is sufficient to constitute probable cause for the first search.

Even given that the first search warrant was valid, defendant then maintains that after recovering the .380 caliber handgun, police officers exceeded the scope of the warrant by continuing their search of the home. Officer Perry testified that upon the officers' entrance into defendant's home with warrants both for the defendant's arrest and a search of the home, the defendant directed the officers to a box at the top of the stairs that contained a gun matching the description in the warrant. After retrieving the box, one of the officers, peering down the hall toward the bedroom, saw .380 caliber ammunition sitting near a gun rack. After moving down the hall to obtain the ammunition, the officer viewed a glass tube that he recognized as a crack pipe. Based on this evidence, the officers obtained a second search warrant to search the home for drugs. Subsequent to this search, the police obtained statements from the defendant based upon these searches. Defendant seeks to have all of the evidence derived from the search beyond the scope of the warrant excluded.

As reviewed by the Virginia Court of Appeals in *Commonwealth v. Thornton*, 24 Va. App. 478, 483-84 (1997), the plain view doctrine holds that an individual has no reasonable expectation of privacy with regard to items in plain view. The court identified two requirements for a seizure to be legitimate under the plain view doctrine: "(a) the officer must be lawfully in a position to view and seize the item, [and] (b) it must be immediately apparent to the officer that the item is evidence of a crime, contraband, or otherwise subject to seizure." *Id.*, at 484 (quoting *Conway v. Commonwealth*, 12 Va. App. 711, 718 (1991)). There is little question that if the officer was lawfully in a position to view the drug paraphernalia, the items perceived would qualify as contraband. Therefore the inquiry must focus on whether the officer was lawfully in a position to view these items.

In *Arizona v. Hicks*, 480 U.S. 321, 328 (1987), the Supreme Court reiterated its warning from *Coolidge v. New Hampshire*, 403 U.S. 443 (1971), that the plain view exception should not be used to "extend a general exploratory search from one object to another until something incriminating at last emerges." *Id.* (quoting *Coolidge*, at 466). As detailed in *Coolidge*, the intent of the warrant requirement is both to eliminate searches not based on probable cause and to prohibit generalized warrants. *Coolidge*, at 467. The officers in this instance had discovered the subject of their search warrant. That first warrant was limited to a search for "a .380 caliber handgun." The warrant did not authorize a search for additional guns or ammunition. While the gun rack may have been in plain view of the officers from their lawful position at the top of the stairs, the drug paraphernalia that formed the basis of the second warrant was not.

The Commonwealth contends that the officers had no basis to believe that the particular .380 caliber handgun recovered on the stairs was the particular gun recently discharged outside. Therefore, according to the Commonwealth, the officers were justified in continuing to search for other such handguns in defendant's home. This argument suggests the type of generalized warrant that the Fourth Amendment was designed to prevent; if police officers were allowed to continue searches based upon the assertion that certain evidence uncovered was not the precise evidence sought, then any search warrant could be used to justify the most intrusive invasions of an individual's privacy. To ensure that generalized searches do not ensue, searches must be limited to the scope specifically identified in the warrant. Since the warrant here specifically limited the search to "a .380 caliber handgun," the subsequent search for ammunition was invalid. As a result, the

officer was not lawfully in the position from which he viewed the crack pipe and other drug paraphernalia. Those items are derived from an illegal search and will be excluded from the evidence presented at trial.

Finally, the defendant argues that the statements made subsequent to the two searches should be excluded as they were also derived from the illegally obtained evidence. In *Brown v. Commonwealth*, 33 Va. App. 296, 310 (2000), the Court of Appeals held that evidence will not be excluded as fruit of the poisonous tree unless "the illegality is at least the §but for' cause of the discovery of the evidence. Suppression is not justified unless 'the challenged evidence is in some sense the product of illegal government activity'." (quoting *Segura v. United States*, 468 U.S. 796, 815 (1984)). Here, the illegal search may have induced statements related to the drugs and drug paraphernalia, but statements relating to the gun were derived from a valid search. The fact that the statements were made subsequent to the illegal search does not invalidate statements made with respect to lawfully obtained evidence. The court is not yet aware of the precise statements made by the defendant, but to the extent the defendant can show that those statements would not have been made but for the illegally obtained evidence, they will be excluded.

Therefore, the discovery of the shell casings, the first search warrant, the discovery of the .380 caliber handgun, and the statements derived from this evidence are all admissible. The evidence derived from the officers' search beyond the scope of the first warrant, specifically, the discovery of the drugs and drug paraphernalia, as well as the statements produced by the discovery of that evidence, will be excluded.